UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARIAMA TOURAY GUMANEH,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, et al.,<br>Respondents. | CASE NO. C26-2767-BAT<br>**ORDER GRANTING HABEAS CORPUS PETITION** |

Petitioner Mariama Touray Gumaneh is a native and citizen of The Gambia who was granted withholding of removal to that country, is the beneficiary of an approved I-130 petition by her U.S. citizen daughter, and has a pending I-485 application for adjustment of status to lawful permanent resident. Immigration and Customs Enforcement (ICE) arrested her and detained her in Northwest ICE Processing Center (NWIPC) based on incorrect information and an invalid warrant to justify immediate removal to the third country of Ghana without providing her meaningful notice and the opportunity to be heard in reopened removal proceedings before an immigration judge. This violated federal law and her right to procedural due process. Petitioner's 28 U.S.C. § 2241 habeas petition, Dkt. 1, is **GRANTED** and her motion for a temporary restraining order, Dkt. 7, is **DENIED AS MOOT**.

**BACKGROUND**

In March 2012, Petitioner was ordered removed to The Gambia but was granted withholding of removal to that country by an immigration judge. Dkt. 1-3, at 2. In March 2019, she was placed on an order of supervision (OSUP), which requires her to report to the Portland, Oregon ICE office on an annual basis. Dkt. 1-4, at 2. She has never missed an appointment, and her next report date is in March 2027. *Id.* at 3. In August 2024, Petitioner's adult U.S. citizen daughter filed an I-130 immediate relative petition on Petitioner's behalf; and the I-130 petition was approved in September 2025. Dkt. 1-10, at 2. On July 2, 2026, Petitioner filed an I-485 application to adjust her status to permanent resident based on the approved I-130 petition, and her biometrics were completed on July 20, 2026. Dkt. 1-11, at 2; Dkt. 12-1, at 2.

On August 4, 2026, ICE officers arrested Petitioner when she was walking near her home. Dkt. 11-1 ("Form I-213"), at 3. The purported reasons for doing so were that she is a Gambian citizen unlawfully present in the United States on a removal list to the country of Ghana, and that Petitioner "had no pending or approved immigration applications that would allow her to remain in the U.S." *Id.* "Based on this information, an ERO supervisor issued a Warrant of Arrest of Alien, Form I-200 . . . on July 23, 2026," which led to the "investigation to locate and apprehend" her. Hours later, ICE officers transferred Petitioner to NWIPC, where she was served with a Notice of Revocation of Release and given an informal interview in which she had the opportunity to respond. *Id.*; *see* Dkt. 11-5, at 2–4. According to the ICE interviewing officer, Petitioner provided no oral or written response regarding the reasons for her revocation and did not provide any documents. Dkt. 11-5, at 4.

On August 19, 2026, Respondents filed forty-eight-hour notice with the Court that they intended to remove Petitioner imminently to another country without specifying what country.

Dkt. 5; Dkt. 5-1, at 2–3. They noted that they had served personal notice of imminent removal on Petitioner on August 6, 2026 while she was in detention. Dkt. 5-1, at 2–3. Respondents did not provide copies of this notice to Petitioner's counsel, Dkt. 5-1, at 2, although Petitioner's counsel originally filed a habeas petition in the District of Oregon on August 4, 2026, a habeas petition in the Western District of Washington on August 5, 2026, and a G-28 notice of entry of appearance as an attorney with ICE's online portal on August 6, 2026. Dkt. 7-1 (Declaration of Philip Smith) ("Smith Decl.") ¶ 4–5. On August 20, 2026, Petitioner moved for an emergency temporary restraining order (TRO); Petitioner's counsel noted he had not had any communication with his client or received any communications or documents from Respondents since her detention on August 4, 2026. Dkt. 7; Smith Decl. ¶¶ 7–8. The Court provisionally granted the TRO and consolidated briefing on the TRO with the briefing on the merits. Dkt. 8. On Petitioner's motion, the Court later extended the provisional grant of the TRO for an additional fourteen days. Dkt. 16. It was not until Respondents filed their response to the habeas petition and motion for a TRO on August 25, 2026, that Petitioner's counsel and the Court were informed that Respondents intended on removing her to Ghana. *Compare* Dkt. 5 (noting that "ICE plans to initiate the removal process for Petitioner upon expiration of the required 48-hour notice" without referring to a country) *with* Dkt. 9, at 8 (noting that "on June 26, 2026, Petitioner was manifested for a charter removal to Ghana"). Although Respondents state Petitioner's appearance on a list of names for removal to Ghana was the basis for her warrant, arrest, detention, and revocation of the OSUP, *see* Dkt. 9, at 8; Dkt. 10 (Declaration of Christopher Hubbard) ("Hubbard Decl.) ¶ 10; Form I-213, at 3, they have not produced this manifest or any travel documentation in Petitioner's name. Moreover, Respondents assert "[o]nce no impediments exist to removal, ICE intends to investigate alternate removal plans to remove Petitioner to a third country," and that

"ICE will follow the March 30, 2025 memorandum of former DHS Secretary Kristi Noem, *Guidance Regarding Third Country Removals*, to effectuate Petitioner's removal." Hubbard Decl. ¶¶ 20–21. The March 2025 Memorandum provides if the United States receives credible diplomatic assurances from a country that noncitizens removed from the United States will not be persecuted and tortured, the noncitizen may be removed without further procedures; and in all other cases, ICE will serve a notice of the intended country of removal, read in a language the noncitizen can understand, will not affirmatively ask whether the noncitizen is afraid of being removed to the intended country of removal, and will generally wait 24 hours following service of notice before effectuating removal (though removal will be effectuated in as little as 6 hours in exigent circumstances). Dkt. 7-4, at 2.

## DISCUSSION

### A. Legal Standards

The Immigration and Nationality Act (INA) expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that the DHS is required to detain a noncitizen during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision. See 8 U.S.C. § 1231(a)(6). "Once ICE releases a [noncitizen] on an OSUP, 'ICE's ability to re-detain that noncitizen is constrained by its own regulations.'" *Alfonso v. Bondi*, No. C25-2748-TL, 2026 WL 395326, at *3 (W.D. Wash. Feb. 12, 2026) (alteration in original) (quoting *Manivong v. Bondi*, No. C25-6747, 2025 WL 3211455, at *5 (C.D. Cal. Sept. 3, 2025)).

Non-citizens subject to a final removal order, like Petitioner, whose removal period has expired can be released from detention (and later re-detained) under two regulations: 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13. Section "241.4 applies to noncitizens who have been ordered removed in general, while § 241.13 specifically applies to noncitizens whom the government has determined 'there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future.'" *Lecky v. Bondi*, No. C25-2637-TLF, 2026 WL 266066, at *5 n.2 (W.D. Wash. Feb. 2, 2026) (alteration in original) (first citing 8 C.F.R. § 241.4(b)(4); and then quoting 8 C.F.R. § 241.13(b)(1)); 8 C.F.R. § 241.13(b)(1) ("Section 241.4 shall continue to govern detention of aliens under a final order of removal . . . unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future."). "The procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026) (cited sources omitted).

Respondents contend their decision to detain Petitioner under 8 U.S.C. § 1231(a)(6) is unreviewable because *Zadvydas* holds that six months is a presumptively reasonable time to effectuate a noncitizen's removal after a final order of deportation and that Petitioner has not yet been detained for six months. Dkt. 9, at 10–11; *Zadvydas v. Davis*, 533 U.S. 678 (2001). This argument is inapposite because the question presented here is not *how long* Petitioner may be properly detained, but *whether* Petitioner is being properly detained, i.e., whether consistent with

federal law and the Constitution, the warrant for her arrest was valid, her OSUP was revoked, and she was subjected to third country removal.[1]

"Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Alfonso*, 2026 WL 395326, at *3 (internal quotation marks omitted) (citing *Saengphet v. Noem*, No. C25-2909, 2025 WL 3240808, at *7 (S.D. Cal. Nov. 20, 2025)).

**B. Lawfulness of Detention**

Petitioner contends that Respondents violated her right to due process and federal law by (1) failing to comply with the applicable regulations regarding her arrest; (2) failing to comply with applicable regulations and provide her with pre-detention notice and an opportunity to be heard with respect to revocation of her OSUP; and (3) attempting and continuing to attempt to remove her to a third country in accordance with the Noem March 2025 memorandum without affording her a meaningful opportunity to seek withholding of removal from a newly designated country of removal.[2] Dkt. 1, at 5–6; Dkt. 12, at 3–10. The Court agrees.

---

[1] There is no dispute that Petitioner's order of removal became final in March 2014 and that she was released under an order of supervision in March 2019. The OSUP provides that Petitioner was permitted her liberty "[b]ecause the agency has not effected your deportation or removal during the period prescribed by law," and that Petitioner was signing an "Acknowledgement of Conditions of Release under an Order of Supervision." Dkt. 1-4, at 2. Thus, for at least seven years Respondents' words and actions have demonstrated that they declined to detain her, and she was being "released" because there was no significant likelihood of Petitioner's removal within a legally permissible time period. Respondents agree with this interpretation by treating the revocation of Petitioner's OSUP as being reviewable under 8 C.F.R. § 241.13(i), which applies in such situations, rather than the more general 8 C.F.R. § 241.4(l). As discussed below, Respondents may, however, be citing § 241.13(i) only because the Notice of Revocation of Release is based § 241.4(l), which can be authorized only by an Executive Associate Commissioner or a district director, and the notice here was signed by neither the Executive Associate Commissioner nor a district director. Dkt. 11-5, at 2–3.

[2] Because the Court finds a violation of due process, it declines to address Petitioner's Administrative Procedures Act ("APA") claim that she may not be removed prior to the adjudication of her pending adjustment of status claim that may (or may not) grant her lawful

**1. Invalid Warrant**

Petitioner argues that the Form I-200 warrant that purportedly authorized her arrest was invalid because such warrants only authorize arrest during removal proceedings. Dkt. 12, at 2–3; *see* 8 U.S.C. § 1226(a); 8 U.S.C. § 236.1(b)(1). The Court agrees.

Respondents have repeatedly cited the Form I-200 Warrant of Arrest of Alien as the basis for arresting Petitioner. Form I-213, at 3; Hubbard Decl. ¶ 11; Dkt. 9, at 9. Not only has this I-200 warrant not been produced here, it also is the wrong warrant to use. An I-200 warrant is used only until removal proceedings are completed. 8 C.F.R. § 236.1(b)(1). With respect to noncitizens like Petitioner who are subject to a final order of removal, a Form I-205 warrant is used. 8 C.F.R. § 241.2(a)(1). The Supreme Court recognized the distinction between warrants used during removal proceedings and warrants used after a noncitizen is ordered removed. *Arizona v. United States*, 567 U.S. 387, 407–08 (2012). "If no federal warrant has been issued, those officers have more limited authority. *See* 8 U.S.C. § 1357(a). They may arrest an alien for being 'in the United States in violation for any [immigration] law or regulation,' for example, but only where the alien 'is likely to escape before a warrant can be obtained.'" *Arizona*, 567 U.S. at 408; *see* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). Respondents do not suggest that Petitioner was likely to escape before a warrant could be issued, and the undisputed facts suggest the opposite. Having never been informed that there was a warrant for her arrest, Petitioner was scooped off the street near

---

permanent residence. Dkt. 1, at 5. Petitioner has not developed this argument further in her traverse. *See* Dkt. 12.

her home, where she was caring for a six-year-old and a fifteen-year-old with special needs. Dkt. 13 (Declaration of Aisha Sumareh) ¶¶ 8–9.

As the District of Minnesota has observed, the distinction between I-200 and I-205 warrants is not "simply a matter of the wrong caption on an administrative form; the two warrants differ in who is authorized to issue them. *Compare* 8 C.F.R. § 241.2(a)(1) (listing immigration officials authorized to issue Form I-205 warrants), *with* 8 C.F.R. §§ 236.1(b)(1), 287.5(e)(2) (much longer list of immigration officials authorized to issue Form I-200 warrants)." *Inti C.-L. v. Blanche*, C26-CV-2777 (PJS/SGE), 2026 WL 2474390, at *2 (D. Minn. June 6, 2026). In this case, because Respondents declined to submit the I-200 warrant, it is unclear exactly who authorized the issuance of the I-200 warrant. What is undisputed, however, is that the arresting officers based their invalid I-200 warrant on incorrect information. ICE gave two reasons the warrant was issued: (1) Petitioner was identified as a Gambian citizen unlawfully in the United States who appeared on the third-country national removal list to Ghana; and (2) their Department of Homeland Security (DHS) system queries indicated that Petitioner had no pending or approved immigration applications. *Id.* Even accepting for the sake of argument that the purported third-country removal list exists and Petitioner was on it—Respondents have neither produced this list nor a declaration by a person who has firsthand knowledge of its creation or content—Petitioner had pending a I-485 petition for an adjustment of status to lawful permanent resident based on being the beneficiary of an approved I-130 immediate relative petition. The invalid I-200 warrant was therefore also supported by demonstrably false information.

The Court finds that Petitioner's arrest was neither supported by a valid warrant nor lawful under 8 U.S.C. § 1357(a)(2). *See also* 8 C.F.R. § 287.8(c)(2)(ii). The arrest was invalid *ab*

*initio* and the proper remedy is release from detention. *See, e.g.*, *Lazaro D.B. v. Mullin*, C206-2798-JRT-EMB (D. Minn. July 20, 2026), at *3; *Inti C.L.*, 2026 WL 2474390, at *2; *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for unlawful executive detention).

**2. Revocation of OSUP**

Petitioner argues that the procedures used in revoking her OSUP violated the applicable regulations and the Due Process Clause of the Fifth Amendment. The Court finds that even if it is presumed that Federal Respondents followed the letter of 8 C.F.R. § 241.4(l) and/or 8 C.F.R. § 241.13(i), the meager procedures—offered only after arrest and in a language Petitioner does not understand—do not provide the process due under the Fifth Amendment.

Once Petitioner was detained, ICE provided notice that her release had been revoked because of a change in circumstances, and she was informally interviewed to see if she had any response to the reasons for the revocation. Dkt. 11-5, at 2–4. That appears to be all that is required under 8 C.F.R. § 241.13(i)(3). The Due Process Clause, however, prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. It is undisputed that Petitioner's grasp of English is poor; there is no indication that she understood the notice given orally and in writing, what questions were asked, and what her oral response was; and it would have been a feat of prestidigitation for her to have produced documents after having been swept off the street and placed in a detention center hours away from her home.

Respondents violated Petitioner's right to due process by providing only an informal interview in a language that Petitioner could not understand, while asking her to respond only hours after her unlawful arrest in a detention center where Petitioner had neither access to any

documents nor to her attorney. *See also He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003) ("[A] competent translation is fundamental to a full and fair hearing. If an alien does not speak English, deportation proceedings must be translated into a language the alien understands.") (quoting *Perez–Lastor v. INS*, 208 F.3d 773, 778 (9th Cir.2000)); *Usubakunov v. Garland*, 16 F.4th 1299, 1300–01 (9th Cir. 2021) ("Navigating the asylum system with an attorney is hard enough; navigating it without an attorney is a Herculean task. The challenge is further complicated where an applicant is detained and does not speak English. Consequently, asylum seekers have a right to counsel, protected by the Constitution and by statute."). For the reasons set forth in *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025), the Court finds that the government action at issue is at the core of the liberty protected by the Due Process Clause, that the risks of erroneous deprivation of liberty are high, and that the government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded that she would not abscond and would not pose a danger to the community. *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

Moreover, the Court finds that the official who revoked Petitioner's release via 8 C.F.R. § 241.4(l) did not have the authority to do. Dkt. 11-5, at 2–3. Under 8 C.F.R. § 241.4(l)(2), only the Executive Associate Commissioner or a district director has the authority to revoke Petitioner's release. Here, the notice of the revocation of release was signed by the Acting Assistant Field Office Director, even though the form itself states, under the signature line, the regulatory requirement that the revocation must be by the Executive Associate Commissioner or the Field Office Director. Dkt. 11-5, at 3 ("(Note: 8 C.F.R. § 241.4 revocation must be EAD or FOD where there is a public interest to do so and referral to EAD not reasonable . . . )").

The Court finds that Respondents violated due process and the applicable regulations by revoking Petitioner's OSUP without providing adequate notice in a language she could understand and an opportunity to be heard before a neutral decisionmaker. The Court finds that Respondents may not re-detain Petitioner absent a pre-detention hearing before a neutral decisionmaker in which Respondents have the burden of demonstrating by clear and convincing evidence either violation of conditions of release or changed circumstances sufficient to show a significant likelihood Petitioner may be removed in the foreseeable future. *See* 8 C.F.R. §§ 241.4(l), 241.13(i).

**3. Removal to a Third Country**

Petitioner also seeks an order requiring Respondents to reopen removal proceedings and provide notice and an opportunity to be heard before removing or attempting to remove her to a third country. In response, Respondents declare that they intend to remove Petitioner to a third country in accordance with the procedures set forth in a March 2025 memorandum by former DHS Secretary Kristi Noem. Hubbard Decl. ¶¶ 20–21.

The Court finds that the government may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with 8 U.S.C. § 1231(b) and the Due Process Clause. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1065 (W.D. Wash. 2025) (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings").

To comply with due process, the government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Aden*, 409 F. Supp. 3d at 1019. The INA prohibits

ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *Aden*, 409 F. Supp. 3d at 1011; *Baltodano v. Bondi*, C25-1958-RSL, 2025 WL 2987766, at *3–*4 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025).

Should the government take steps to remove Petitioner to a third country, it must provide her with written notice of its intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *Nguyen*, 796 F. Supp. 3d at 727 ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F. Supp. 3d at 1010–11).

**CONCLUSION**

Respondents used incorrect information to conduct a warrantless arrest of Petitioner, failed to provide meaningful notice in a language she could understand or an opportunity to respond to a neutral decisionmaker regarding the revocation of her order of supervision, and attempted to expedite her removal to a third country to which she has no relationship without

providing her notice and opportunity to challenge that third-country removal in reopened removal proceedings, all the while failing to communicate with her counsel. If the right to due process exists, it does not permit such violations of the law, regulations, and human decency.

The Court **GRANTS** Petitioner's habeas petition, Dkt. 1, and **DENIES AS MOOT** Petitioner's motion for a temporary restraining order, Dkt. 7.

Respondents and all their officers, employees, attorneys, and people acting on their behalf or in concert with them:

1. Are **ORDERED** to release Petitioner from custody **within twenty-four (24) hours** under the same conditions as her most recent order of supervision and to provide certification of her release to the Court **within forty-eight (48) hours**;
2. Are **PROHIBITED** from re-detaining Petitioner without compliance with all applicable regulations, including 8 C.F.R. §§ 241.2(a)(1), 241.4(l) and 241.13(i). Given the current circumstances, this means that the government may not re-detain Petitioner unless:
    a. She violates a condition of her order of supervision, and the government holds a hearing before a neutral decisionmaker at which the government bears the burden of demonstrating flight risk or danger to the community by clear and convincing evidence; or
    b. The government holds a hearing before a neutral decisionmaker at which the government bears the burden of demonstrating changed circumstances sufficient to show a significant likelihood Petitioner may be removed in the foreseeable future by clear and convincing evidence;

3. Are **PROHIBITED**, in accordance with a March 2012 immigration judge decision, from removing Petitioner to The Gambia; and

4. Are **PROHIBITED** from removing Petitioner to any other country without notice and a meaningful opportunity to be heard in reopened removal proceedings with a hearing before an immigration judge. Petitioner is represented by counsel and Respondents shall give notice to both the petitioner and to her counsel.

DATED this 4th day of September, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge